UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.

ELIZABETH RIVERA

CRIMINAL COMPLAINT

Case No. 3:20-mj-1265-PDB

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.   On or about August 10, 2020, in the Middle District of Florida, the defendant,

> knowing that she had been convicted of a crime punishable by imprisonment for more than one year, specifically distribution of a controlled substance within 300 feet of a park, on or about February 12, 1996, trafficking in cocaine, on or about January 25, 1993, and selling drugs within 1000 feet of a school zone, on or about January 25, 1993, knowingly possessed, in and effecting interstate commerce, a firearm, that is, an Anderson Manufacturing multi-caliber rifle,

in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).   I further state that I am a Special Agent of the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant
Brett Eubank

Sworn to before me and subscribed in my presence,

on August 10, 2020           at      Jacksonville, Florida

PATRICIA D. BARKSDALE
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT

I, Brett A. Eubank, being duly sworn, deposes and states:

## I. INTRODUCTION

### Identity of Affiant

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since January 2008. I am currently assigned to the Jacksonville, Florida Division of the FBI where I conduct a variety of investigations in the area of violent crimes and drug trafficking. In the performance of my duties, I have investigated and assisted in the investigation of matters involving violations of federal law related to domestic terrorism, international terrorism, weapons of mass destruction, bombing matters, interstate communication of threats, federal firearms offenses, and drug trafficking.

2. In the course of my duties as a special agent of the FBI, I have been investigating the unlawful possession of firearms and possession with intent to distribute controlled substances by Elizabeth RIVERA. This Affidavit relates to that investigation.

3. The information in this Affidavit is based on my personal knowledge as well as information, knowledge, observations, and investigations of other federal, state, and local law enforcement officers.

4. This Affidavit does not contain all information discovered during this investigation, rather only that believed necessary to provide a legal basis for the requested criminal complaint.

### Requested Complaint

5. Based on the information in this Affidavit, I request that a criminal complaint be issued for Elizabeth RIVERA for violating the provisions of Title 18, United States Code, Section 922(g)(1).

### Federal Law

6. I am familiar with federal law including Title 18, United States Code, Section 922(g)(1), which prohibits the knowing possession of a firearm by a convicted felon.

## II. INVESTIGATION

7. RIVERA came to the attention of the FBI Delaware Violent Crime Safe Streets Task Force as part of an investigation of Robert "Bobby" RODRIGUEZ (referred to herein as "ROBERT" for clarity because another confederate's last name is also Rodriguez). ROBERT is the paramour of RIVERA. FBI Delaware's investigation revealed that ROBERT is a drug trafficker who operates in Wilmington, Delaware, along with a number of confederates. This information has been corroborated in multiple ways, including surveillance, records checks, and a controlled purchase from ROBERT.

8. I have spoken with FBI Delaware Task Force Officer Alexis Schupp, who informed me that multiple confidential sources provided information to FBI Delaware that ROBERT was operating, since at least sometime in 2019, a heroin/fentanyl distribution business from a location in Delaware known as Rodriguez Market, which

is located at 1322 West 4th Street, Wilmington, Delaware 19805. Specifically, TFO Schupp informed me that in the first week of March 2020, TFO Schupp and SA Shawn Haney conducted an interview with a confidential source, who stated that ROBERT was the head of the heroin/fentanyl operation being run out of the entirety of 1322 West 4th Street (Rodriguez Market and two apartments located above). The confidential source stated that ROBERT lived above Rodriguez Market on the second floor in one of two apartments. The confidential source stated that a Hispanic male named "Carlos," a/k/a "Honduras," (hereinafter "Carlos") resided in the second apartment. The confidential source stated that ROBERT splits his time between residing in Jacksonville, Florida, and the second floor apartment above Rodriguez Market. The confidential source stated that ROBERT lived in Jacksonville with his female paramour who lives in Jacksonville full time. The confidential source stated that ROBERT also sold heroin/fentanyl from his apartment located above Rodriguez Market. The confidential source stated that Carlos would sell from his second floor apartment above Rodriguez Market.

9. On July 17, 2020, TFO Schupp and other members of law enforcement met with a confidential source in order to conduct a controlled purchase of heroin/fentanyl from ROBERT. During the controlled purchase, ROBERT openly discussed his drug dealing operation, including that his "girl" was assisting ROBERT with moving drug proceeds back and forth between various accounts. ROBERT also described that he had installed a safe beneath the floorboards of his residence, which

he was using to store drug proceeds. ROBERT further disclosed that he had a firearm at his residence.

10. Based on this discussion between ROBERT and the confidential source on July 17, 2020, and TFO Schupp's investigation of ROBERT, on August 10, 2020, TFO Schupp applied for a warrant to search the residence of RIVERA, who was identified as ROBERT's paramour. On the same date, at 8:45 a.m., U.S. Magistrate Judge Patricia D. Barksdale issued a warrant to search RIVERA's residence, which is located at 8455 Ocala Avenue in Jacksonville, Florida, within the Middle District of Florida. FBI Delaware also obtained warrants to search multiple locations in Delaware, including Rodriguez Market.

11. The 8455 Ocala Avenue residence is a mobile home in Jacksonville, Florida, that is owned by RIVERA, who is the paramour of ROBERT. RIVERA is a three-time convicted felon in the State of Delaware. On February 12, 1996, RIVERA was found guilty of Distribution of a Controlled Substance within 300 Feet of a Park. On January 25, 1993, RIVERA was found guilty of Trafficking in Cocaine. Also on January 25, 1993, was found guilty of Selling Drugs within 1000 Feet of a School Zone. Thus, RIVERA is prohibited from possessing a firearm.

12. On July 25, 2020, RIVERA was observed by members of law enforcement in Wilmington, Delaware, visiting ROBERT at his apartment above Rodriguez Market.

13. On July 28, 2020, surveillance was conducted by law enforcement at the 8455 Ocala Avenue residence. RIVERA and a vehicle, a 2018 black Kia sedan (FL HVFU51), were observed at the 8455 Ocala Avenue residence. This sedan is registered to both RIVERA and ROBERT. During the surveillance, members of law enforcement observed RIVERA operating the Kia and visiting the Vystar Credit union located at 7765 Normandy Boulevard in Jacksonville, Florida, and several other locations.

14. The 8455 Ocala Avenue residence is the listed address on ROBERT's Florida driver's license. ROBERT also lists this address on the registration for his Hyundai Veloster (FL JZZU29).

15. Utility records are in the name of RIVERA at the 8455 Ocala Avenue residence, per CLEAR.

16. Beginning around 5:50 a.m. on the morning of August 10, 2020, I and other law enforcement officers established visual surveillance of the 8455 Ocala Avenue residence. Agents observed the following:

   a. At approximately 6:50 a.m., a female, later identified as RIVERA, was observed by FBI Special Agent Edward Figueroa as she exited the 8455 Ocala Avenue residence via the front door, while carrying a white trash bag. SA Figueroa then observed RIVERA carrying the white trash bag into the front yard of the 8455 Ocala Avenue residence, at which point his view became obscured. SA Figueroa moments later observed

5

RIVERA return to the residence, at which point she was no longer carrying the white trash bag.

b. At approximately 6:59 a.m., I, SA Figueroa and other law enforcement officers observed a silver sedan approach the 8455 Ocala Avenue residence. The following information is a composite of observational details that I learned from multiple agents conducting surveillance. In sum, the silver sedan was observed to pull up to the gate of the 8455 Ocala Avenue residence, and the gate was then opened. The silver sedan then pulled through the open gate and parked in the area in front of the 8455 Ocala Avenue residence. SA Figueroa then observed a black female and a black male exiting from the silver sedan. The black female and black male were observed meeting with RIVERA on the front porch of the 8455 Ocala Avenue residence. During this time, SA Figueroa observed that the black male and black female appeared to be attempting to comfort RIVERA. SA Figueroa then observed all three individuals entering the residence.

c. At approximately 7:08 a.m., SA Figueroa observed the black male who had arrived in the silver sedan exit the residence and place a dark object into the trunk of the silver sedan, and then return to the 8455 Ocala Avenue residence. A short time later, SA Figueroa observed the black male, black female, and RIVERA exit the residence, and SA Figueroa

observed them hugging and appearing to say goodbye. The black male and black female then entered the silver sedan and began to back the vehicle toward the street. At that point, agents stopped the silver sedan and questioned the two occupants. One of the occupants, Jameel Caldwell, was the registered owner of the silver sedan and provided written consent to search the silver sedan. Upon searching the silver sedan, SA Joshua McLeod identified a black rifle bag in the trunk of the silver sedan. Inside of the black rifle bag was an Anderson Manufacturing multi-caliber rifle and ammunition, some of which was loaded into a magazine. The serial number of the Anderson Manufacturing multi-caliber rifle has been obliterated. The black male, identified by agents as Laron Caldwell, provided a statement to agents. Initially, Laron Caldwell denied having placed the bag into the trunk, but upon further questioning, he informed agents that he had obtained the rifle bag from RIVERA and placed it into the trunk of the silver sedan. Laron Caldwell stated that RIVERA had informed him that there was a firearm in the rifle bag. Jameel Caldwell, stated that she is a coworker of RIVERA, and had received a call that morning in which RIVERA was distraught. Jameel Caldwell stated, among other things, that RIVERA had given a firearm to her husband, Laron Caldwell, because RIVERA did not want the firearm to be stolen.

17. On August 10, 2020, TFO Schupp informed me that, at approximately 6:01 a.m. on that date, agents had executed multiple search warrants related to this investigation in Delaware, and that upon attempting to execute a search warrant at Rodriguez Market, they encountered a reinforced door, which required an extended period of time to breach. Ultimately, the agents were able to make entry into Rodriguez Market and ROBERT's apartment above Rodriguez Market. ROBERT was encountered inside of what had previously been identified as his apartment above Rodriguez Market. The search revealed that within ROBERT's apartment, there were 16 bundles of heroin/fentanyl and a stolen Glock pistol inside the tank of the toilet. Additional bundles of potential narcotics were discovered in other areas of the building.

18. On August 10, 2020, while interviewing Jameel and Laron Caldwell, agents requested Jameel Caldwell's assistance in contacting RIVERA in order to ask RIVERA to consensually speak with agents. Jameel Caldwell was able to call RIVERA and thereafter RIVERA exited the residence and voluntarily spoke with agents. After some initial discussion of the reasons why agents were at RIVERA's residence, agents provided RIVERA with Miranda warnings via form, which was also read aloud to RIVERA by me. RIVERA signed the Miranda form and agreed to answer agents' questions. In summary, RIVERA stated that early that same morning, RIVERA was preparing for work when she received a call from her sister-in-law informing RIVERA that her father-in-law and husband's store had been raided.

RIVERA stated that she had then packed up a suitcase with clothing and money and intended to fly to Delaware on that date in order to assist her father-in-law. Agents clarified that the person RIVERA referred to as her husband is ROBERT, but that they are not legally married. RIVERA stated that her husband is a heroin user and had planned to travel from Wilmington, Delaware, to Jacksonville, Florida, on that date with RIVERA's two grand-daughters. RIVERA stated ROBERT had brought the Anderson Manufacturing multi-caliber rifle to her residence approximately three weeks prior, and RIVERA had discovered the rifle in ROBERT's closet within her residence shortly after ROBERT departed. RIVERA stated that she had previously discarded another firearm that ROBERT had brought to the residence approximately two years prior. RIVERA stated that ROBERT sells heroin/fentanyl for at least the past two years in Wilmington, Delaware. RIVERA stated that she had placed a "log" of heroin into a trash bag and placed the bag into the trash container that morning. RIVERA stated that she had called her boss, who is Jameel Caldwell, that morning, and that Jameel and Laron Caldwell had come to her home because they could tell she was upset. RIVERA stated she told Jameel and Laron Caldwell about the call she had received that morning from her sister-in-law. RIVERA stated that she had given Laron Caldwell the Anderson Manufacturing multi-caliber rifle and asked him to get rid of it. RIVERA stated that she had recently driven what she believed to be $15,000 cash from Wilmington, Delaware, to Jacksonville, Florida. RIVERA stated that cash had been given to her by ROBERT. RIVERA stated that she had placed the $15,000

9

in cash into her suitcase and had intended to use it to bail her father-in-law out of jail. RIVERA stated that she "did time" in the past for trafficking heroin and that was why she did not want firearms in the house.

19. On August 10, 2020, RIVERA provided written consent to search the trash containers located at the 8455 Ocala Avenue residence. FBI Photographer John Fletcher, who is a member of the FBI's Evidence Response Team, obtained the trash bags from the trash containers, and conducted a search. A search of one of the trash bags revealed that it contained dozens of individual packages of suspected heroin/fentanyl that appeared to be prepared for distribution.

20. On August 10, 2020, agents also searched the residence located at 8455 Ocala Avenue, pursuant to the search warrant, and discovered a safe in a closet of the home. Also inside the home on RIVERA's bed was a suitcase that was open with some clothing placed inside. I conducted a search of the suitcase. The lining of the suitcase contained a zipper. Upon opening the zipper, I discovered packaged and wrapped bundles of cash. Later examination determined that the cash totaled approximately $19,825.

21. On August 10, 2020, I conferred with Special Agent Mark Latham of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") regarding the firearm and ammunition recovered from the 8455 Ocala Avenue residence. Special Agent Latham is a firearms interstate nexus expert for ATF. Special Agent Latham informed

me that based upon his review of photographs of the firearm, the Anderson Manufacturing multi-caliber rifle was manufactured outside of the State of Florida.

## CONCLUSION

22. Based upon the foregoing, I submit that probable cause exists to believe that RIVERA is a convicted felon and that on August 10, 2020, she was in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

I state that the above information is true and correct to the best of my knowledge, and belief.

*[signature]*
Brett Eubank
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this  10  day of August, 2020.

*[signature]*
PATRICIA D. BARKSDALE
United States Magistrate Judge
Middle District of Florida